# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

LYNN RUMMINGER,

                Plaintiff,

-vs-                                            Case No. 2:10-cv-682-FtM-29SPC

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.
_____

## REPORT AND RECOMMENDATION[1]

**TO THE UNITED STATES DISTRICT COURT**

      This matter comes before the Court on Plaintiff, Lynn Rumminger's Complaint seeking review of the final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's claim for disability insurance (Doc. #1) filed on November 15, 2010. The Plaintiff filed her Memorandum of Law in Support of the Complaint (Doc. #14) on May 18, 2011. The Commissioner filed its Memorandum in Support of the Commissioner's Decision (Doc. #15) on June 16, 2011. Thus, the Motion is ripe for review.

      The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case and issues the following Report and Recommendation.

---

[1]This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 42 U.S.C. § 405(g).

# FACTS

## *Procedural History*

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on December 16, 2008, alleging disability beginning as of her protective filing date of February 1, 2008. (Tr. 118, 158). The Agency denied this application initially on February 4, 2009, and on reconsideration on April 2, 2009. (Tr. 121, 126). Administrative law judge (ALJ) M. Dwight Evans held a hearing on March 15, 2010. (Tr. 76, 82). At the hearing, Plaintiff and her husband appeared and testified. (Tr. 82, 88, 101). Plaintiff was represented by an attorney. (Tr. 82). The ALJ issued an unfavorable decision dated May 21, 2010, denying Plaintiff's claims. (Tr. 16-24). The Appeals Council denied Plaintiff's request for review on October 6, 2010, making the hearing decision the final decision of the Commissioner. (Tr. 1). As a consequence, on November 15, 2010, Plaintiff timely field a Complaint with this Court. (Doc. #1). This case is ripe for review under 42 U.S.C. § 1383(c)(3), which incorporates by reference 42 U.S.C. § 405(g).

## *Plaintiff's History*

Plaintiff, Lynn Rumminger, was 48 years of age when the ALJ issued his hearing decision. (Tr. 24, 158). Plaintiff attended school until the tenth grade. (Tr. 177). Prior to her alleged disability onset date, Plaintiff worked as an information technology account manager, an accounting manager, and an administrative supervisor/purchasing agent. (Tr. 23, 173). Plaintiff alleged disability due to problems with hearing. (Tr. 172).

*Medical Evidence*

On January 9, 2008, Plaintiff was seen by Herbert Silverstein, M.D., from Silverstein Institute for complaints of tinnitus. (Tr. 223). He diagnosed Plaintiff with subjective tinnitus.[2] (Tr. 223). In addition, pure tone testing revealed that Plaintiff suffers from Asymmetric Sensorineural Hearing Loss. (Tr. 223).

On September 29, 2008, Plaintiff underwent a hearing test in a sound proof booth, with masking used, performed by Jack J. Wazen, M.D. (Tr. 221). Pure tone testing revealed a severe high-frequency sensorieneural hearing loss in the right ear. (Tr. 221). In the left ear, it revealed a profound high-frequency hearing loss. (Tr. 221). Rinne test with a tuning fork revealed that Plaintiff was positive bilaterally at 512 Hz and 256 Hz. (Tr. 222). Dr. Wazen diagnosed Plaintiff with Sensory Hearing Loss. (Tr. 222). Dr. Wazen, who treated Plaintiff on multiple accessions, found that Plaintiff had an excellent ability to hear and understand simple words when amplified and noted that no pain, drainage, pressure, fullness, or vertigo were reported. (Tr. 221).

On February 3, 2009, Mary Stefanick, a non-examining source, completed a physical residual functional assessment at the request of Social Security Administration. (Tr. 234-41). She observed that Plaintiff had limited hearing and that "[t]he MER documents she has the excellent ability to hear when amplified." (Tr. 238). She stated that the Plaintiff must avoid concentrated exposure to noise and vibration. (Tr. 238). She noted that Plaintiff should avoid loud noises with a noise level of quiet

---

[2]Tinnitus is a sensation of noise that seems to be in the ear or head when no external sound is actually present. Medical Disability Guidelines, Tinnitus, http://www.mdguidelines.com/tinnitus, last visited Nov. 4, 2011. Between the two types of tinnitus, subjective and objective, subjective tinnitus is more common. Id. The difference between the two is that with objective tinnitus, a health care practitioner can hear noise in the ear, and with subjective tinnitus, only the patient can hear the noise. Id.

to moderate. (Tr. 238).

On March 26, 2009, James Patty, M.D., a non-examining physician, completed a physical residual assessment at the request of Social Security Administration. (Tr. 242-249). Based on the medical documents, he noted that audiometric testing performed in September 2009 showed 30-50 dB thresholds in the 500-2000 MHz range in the right ear, which does not meet listing levels. (Tr. 243). Speech recognition was 45 dB in the right ear and 80 dB in the left ear (Tr. 243). He noted that Dr. Wazen's ENT exam from September 2008 indicated no difficulty with communication. (Tr. 243).

On February 22, 2010, Yadiel Alameda, M.D., opined that Plaintiff does not meet Listing 2.07, Special Senses and Speech, provided in 20 C.F.R. 404, Subpt. P., App. 1. (Tr. 252). However, Dr. Alameda opined that Plaintiff met listings 2.08A and 2.08B and that this condition existed since February 1, 2008. (Tr. 255).

Dr. Alameda completed a hearing loss questionnaire at the request of the Plaintiff's attorney dated February 27, 2010, indicating that the Plaintiff is markedly impaired in the ability to hear instructions on the job, hear telephone, hear sirens, and hear horns. (Tr. 258). He also opined that Claimant should avoid hazards, machinery, work around equipment, and stressful work. (Tr. 258). Dr. Alameda stated that Claimant has been disabled since February 1, 2008. (Tr. 258).

*Non-Medical Evidence*

On December 19, 2008, Claimant was interviewed by the Social Security Administration. (Tr. 169). The interviewer observed based on the face-to-face conversation with Plaintiff that she "has to stare up close in your face and even then can't hear you, or understand at all what you were saying." (Tr. 169). Plaintiff told the interviewer that she is totally deaf in the left ear and has less

than 20 percent hearing in the right ear. (Tr. 172). She stated she cannot hear men's voices at all, but can hear women's voices. (Tr. 172). She cannot words, but only vibrations. (Tr. 172). Her job as a financial analyst required her to attend group meetings, to talk on the phone, and to be in a loud work environment, which she cannot do due to her hearing impairments. (Tr. 172). She also cannot hear background noises, performing purchasing, arranging contracts, negotiation, or pricing. (Tr. 172)

Plaintiff further stated that she lost hearing in her left ear. (Tr. 172). In April 2006, she moved to Florida and found a new job. (Tr. 172). However, in July 2006, her right ear started losing hearing. (Tr. 172). Eventually she was laid off on February 1, 2008. (Tr. 172). She stated that she cannot even work at a drive-thru as she cannot hear the orders. (Tr. 172).

In Disability Report - Adult, Plaintiff stated that she worked as an "Admin Supervisor" between August 1990 and May 2000. (Tr. 173). Her everyday duties involved accounts receivable, accounts payable, receptionist, facilities management, and purchasing. (Tr. 173). She also had to carry money to the bank and carry files. (Tr. 174). Her job required her to supervise ten people. (Tr. 174).

In Disability Report - Appeal, Plaintiff stated that beginning in February 2009, she started experiencing headaches and losing her balance when walking due to vertigo. (Tr. 199). Claimant also stated that she does not go out by herself to stores. (Tr. 201). She is afraid to walk across the street and parking lots or running any loud machines such as TV, music, vacuum, washer, and kitchen appliances. (Tr. 201). Personal banking and driving are impossible tasks for her. (Tr. 201). Her tinnitus is so loud that it gives her headaches and makes her confused. (Tr. 201). She hears "extra noises" such as background sounds and it is difficult for her to concentrate. (Tr. 201).

### Administrative Law Hearing Before the ALJ

On March 15, 2010, the ALJ held the administrative law hearing. (Tr. 82). At the hearing, Plaintiff and her husband Dean Rumminger appeared and testified. (Tr. 82). Due to Plaintiff's hearing problem, the ALJ permitted Plaintiff to testify by reading questions into the record and then answering them. (Tr. 85-86).

The Plaintiff testified that tenth grade was the farthest she has gone to school. (Tr. 88). She cannot return to work because she suffers from severe tinnitus. (Tr. 89). She must lay down for two to three hours per day in order to "get rid of" the noise in her head. (Tr. 89). She gets very nervous with tinnitus. (Tr. 89). She also stated that she cannot work because she has problems hearing speech and words. (Tr. 89).

Plaintiff further testified that in the past she worked as a purchasing agent/accounts payable, facilities coordinator, administrator, and worked at HR dealing with employee benefits. (Tr. 89). These jobs required hearing in order to be able to follow instructions. (Tr. 89). Plaintiff testified that she cannot do those jobs without hearing. (Tr. 89). She lost her hearing before she was laid off from her last job. (Tr. 89). Plaintiff further stated that if she were given a job which would require taking instructions from a computer, she would still not be able to concentrate for more than 10 minutes due to severe tinnitus three to four times a week. (Tr. 90).

Plaintiff testified she is not completely deaf in her right ear, but cannot make out what people are saying due to speech discrimination. (Tr. 90). She can hear noise, but cannot make out words. (Tr. 90). She cannot read sign language. (Tr. 90).

Plaintiff stated that when she worked in 2007, she had a very hard time talking with people because she could not hear what they were saying. (Tr. 90). She could not attend corporate

meetings. (Tr. 90). The dean of her school would take care of talking with parents and employees (Tr. 91).

Plaintiff testified hearing aids amplify sounds and help her identify the direction of the source of the sound, but do not help her with speech which still sounds distorted. (Tr. 91). Hearing aids make Plaintiff's tinnitus even louder. (Tr. 91). In addition, she cannot wear them for a long time because they give her headaches and Plaintiff "cannot turn off this tinnitus." (Tr. 91).

Plaintiff testified that she cannot hear machines such as washing machines, dryers, vacuum cleaners, air conditioner, humming noise, music, TV, people screaming, or anything that is loud. (Tr. 91). She can hear any sharp loud sounds such as dogs barking. (Tr. 91). If the sound comes up suddenly her head tends to jerk backwards and she loses her balance. (Tr. 91).

Plaintiff testified that she applied with five different agencies seeking for help with finding a job. (Tr. 92). However, these agencies did not provide her any training. (Tr. 92). When asked if she sought any help from the State Department of Vocational Rehabilitation, Plaintiff testified that she does not know and that this agency is not familiar to her. (Tr. 100). Plaintiff never applied for unemployment because the church at which she worked did not give out unemployment. (Tr. 94). Plaintiff also never applied for long-term or short-term disability. (Tr. 94). Plaintiff testified that her church had COBRA medical insurance, but it was too expensive. (Tr. 98).

Plaintiff claims she only drives to the corner store and back. (Tr. 95). Plaintiff has a regular driver's license to operate a car. (Tr. 94). She avoids driving due to inability to hear her surroundings. (Tr. 95). Her tinnitus makes her too nervous to drive. (Tr. 95). Her husband does the driving. (Tr. 95).

Next, Plaintiff's husband, Dean Arthur Rumminger, testified at the hearing. (Tr. 102). He

stated that he had been married to Plaintiff for nineteen years. (Tr. 103). Plaintiff's last job was at Good Day Shepard School from which she was laid off. (Tr. 103). Plaintiff's position was as accounts receivable, working generally from 8 a.m. until 5 p.m. (Tr. 104). He stated that one other person was laid off from that job besides Plaintiff. (Tr. 103). They do not have any children. (Tr. 106).

In order to communicate at home with Plaintiff, her husband writes down things he wants to say to her. (Tr. 107). He and his wife created their own type of sign language which they use to communicate between each other. (Tr. 107). They make signals with hands, point at things, but the majority of the time they simply use written communication. (Tr. 107).

Plaintiff's husband also testified that she has a problem using a computer because of a very short attention span. (Tr. 108). Plaintiff cannot sit for more than 10 or 15 minutes. (Tr. 108). He knows Plaintiff is in pain when she uses the computer because he can see it from her facial expression. (Tr. 108-10). The more Plaintiff tries to concentrate on something, the more pain her husband can see on her facial expression. (Tr. 110-11). Also, Plaintiff complains to her husband about tinnitus all the time. (Tr. 109).

Plaintiff's husband observed that sound of a lawnmower outside aggravates Plaintiff's problems. (Tr. 111). He also noted that Plaintiff has balance problems, walks like a crab, and bumps into him. (Tr. 111). Plaintiff's husband further testified that Plaintiff constantly complains to him that her hearing aides do not work. (Tr. 111). He testified that they went together to some vocational agency, which helps the hearing impaired. (Tr. 112). However, she did not receive any calls from the agency. (Tr. 112).

At home, Plaintiff performs strictly light cleaning. (Tr. 114). Her husband performs

everything else. (Tr. 114). Plaintiff can perform cleaning only for approximately 15 to 30 minutes. (Tr. 114). She has to rest during the day. (Tr. 114). In the morning she lays down for at least a couple of hours. (Tr. 115).

### *Administrative Law Judge's Decision*

On May 21, 2010, after reviewing all of the evidence and testimony, ALJ M. Dwight Evans issued a "Notice of Decision - Unfavorable." (Tr. 14-24). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2008. (Tr. 18). At step two, the ALJ found that Plaintiff has the following severe impairment: bilateral sensory hearing loss. (Tr. 18). At step three, the ALJ found that Plaintiff's impairments or combination of impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18). The ALJ determined Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but could not perform work that involved even moderate exposure to noise. (Tr. 19). Finally, at step four, the ALJ concluded that Plaintiff was not disabled because she was capable of performing her past relevant work as a purchasing agent as it was actually and generally performed. (Tr. 23).

### **STANDARD OF REVIEW**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Comm'r, 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a Plaintiff is disabled, the ALJ must follow the sequential inquiry described in the regulations (20 C.F.R. §§ 404.1520(a), 404.920(a)). The inquiry requires the ALJ

to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:

> Step 1. Is the Plaintiff engaged in substantial gainful activity? If the Plaintiff is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.
>
> Step 2. Does the Plaintiff suffer from a severe impairment? If not, then the Plaintiff is not disabled. If there is a severe impairment, the ALJ moves on to step three.
>
> Step 3. Does the Plaintiff's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the Plaintiff is disabled. If not, the next question must be resolved.
>
> Step 4. Can the Plaintiff perform his or her former work? If the Plaintiff can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.
>
> Step 5. Can he or she engage in other work of the sort found in the national economy? If so, then the Plaintiff is not disabled. If the Plaintiff cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

The Commissioner's findings of fact are conclusive if supported by substantial evidence (42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838B39 (11th Cir. 1982))); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). The District Court must view the evidence as

a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Phillips, 357 F.3d at 1240 n.8; Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).

## **DISCUSSION**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or can be expected to last, for a continuous period of not less than twelve (12) months (42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505). The impairment must be severe, making the plaintiff unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy (42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505 - 404.1511). To determine whether the plaintiff is disabled, the ALJ is required to evaluate the claim according to the established five-step evaluation process.

The Plaintiff states that the ALJ committed two errors for which this case should be revered and remanded for further development or for payment. Specifically, Plaintiff alleges: (1) the ALJ erred in his failure to consider the evidence that Plaintiff, who is deaf in the left ear, had speech discrimination of 60 percent in her right ear, which together with Plaintiffs tinnitus and balance problems warranted an inclusion of further limitations in the Plaintiff's RFC assessment; and (2) the Commissioner failed to meet his burden at Step Five of showing that there are other jobs in the

national economy which Plaintiff could perform. The Court will consider each of these issues below.

### *1. Whether Substantial Evidence Supports the ALJ's RFC Assessment*

Plaintiff challenges the ALJ's finding that she retained the RFC to perform work at all levels with less than moderate exposure to noise. Specifically, Plaintiff alleges that the ALJ did not consider the evidence that in 2007, Plaintiff's speech discrimination was 60 percent. (Tr. 226). Plaintiff also points out that sometime in 2008, a Social Security Administration interviewer, who met with Plaintiff face-to-face, observed that Plaintiff had a hard time hearing and could not understand what she was saying. (Tr. 169). Therefore, the Plaintiff argues that the ALJ made a legal error of not considering all of the relevant evidence.

The fourth step in the evaluation process requires the ALJ to determine the plaintiff's residual functional capacity (RFC) and based on that determination, decide whether the plaintiff is able to return to his/her previous work. McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of RFC is within the authority of the ALJ and along with the claimant's age, education, and work experience the RFC is considered in determining whether the claimant can work. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)). The RFC assessment is based upon all the relevant evidence of a claimant's remaining ability to do work despite her impairments. Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004); Lewis, 125 F.3d at 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). The ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. Phillips, 357 F.3d at 1238. That is, the ALJ must determine if the claimant is limited to a particular work level. Id. (citing 20 C.F.R. § 404.1567).

In finding Plaintiff capable of performing work with less than moderate exposure to noise, the ALJ cited the results of a hearing test from September 29, 2008, and Plaintiff's treatment notes from the Florida Ear & Sinus Center/Silverstein Institute.[3] (Tr. 21). In the accompanying treatment notes from September 29, 2008, Dr. Wazen noted that the test demonstrated "excellent ability to hear and understand simple words when amplified." (Tr. 221). Additionally, Dr. Wazen and Dr. Herbert Silverstein consistently noted that Plaintiff was "able to communicate without difficulty." (Tr. 221-23). The ALJ also reasoned that Plaintiff's treatment notes did not support her allegations of symptoms of headaches and loss of balance/vertigo. (Tr. 21). Plaintiff testified that she cannot wear her hearing aids for a long time due to resulting headaches (Tr. 91), however, she failed to report symptoms of headaches to Dr. Wazen or Dr. Silverstein. (Tr. 221-23). Plaintiff also alleged "losing [her] balance when walking (vertigo)" (Tr. 199), but reported to Dr. Wazen that she did not experience vertigo. (Tr. 221-23). A claimant's failure to complain to her treating physician about symptoms suggests that those symptoms are not disabling. Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (the failure to report symptoms to treating doctors is substantial evidence that the symptoms alleged are not significant).

Additionally, the ALJ found that Plaintiff's sparse medical treatment and significant gaps in treatment undermined her claim that she was disabled. (Tr. 21, 23). Following her alleged onset date of February 1, 2008, Plaintiff only visited Dr. Wazen on two occasions — September 17, 2008 and September 29, 2008. (Tr. 221-22). The medical records do not indicate that Plaintiff received any further treatment from Dr. Wazen or any other physician. The ALJ properly considered

---

[3] It appears that the Florida Ear & Sinus Center and the Silverstein Institute are one in the same. The treatment notes for both places are grouped together and they list the same physicians as part of the practice (Tr. 221, 223).

Plaintiff's minimal treatment history in finding her capable of the full range of work with less than moderate exposure to noise.  See 20 C.F.R. § 404.1529(c)(3)(v).

The ALJ further relied on the opinion of Dr. James Patty, M.D., a state agency medical consultant, in formulating Plaintiff's RFC. (Tr. 22, 242-49).  State agency medical consultants are considered experts in the Social Security disability programs and their opinions may be entitled to great weight if supported by the evidence in the record.  See 20 C.F.R. § 404.1527(f)(2)(i); Social Security Ruling (SSR) 96-6p.  Dr. Patty found Plaintiff capable of all ranges of work, so long as she was not exposed to even moderate noise.  (Tr. 243-46).  Dr. Patty acknowledged that Plaintiff was limited in hearing, citing findings from Dr. Wazen's September 29, 2008 hearing test, including that Plaintiff had a speech recognition threshold (SRT) of 45 in the right ear and 80 in the left ear.  (Tr. 243, 246).  Dr. Patty also noted Dr. Wazen's observation that Plaintiff had no difficulty communicating.  (Tr. 243).

Additionally, the ALJ relied on Plaintiff's reported daily activities and search for work during the alleged period of disability, in finding Plaintiff capable of the work activities described in her RFC. (Tr. 21-23).  Although Plaintiff initially reported that she did not drive or go out to stores by herself (Tr. 201), she testified that she has a regular driver's license and drives to the corner store. (Tr. 94-95).  Plaintiff's husband testified that Plaintiff goes on the computer and does light cleaning for 15 to 30 minutes at a time.  (Tr. 108, 114-15).  Plaintiff also testified that she applied for jobs with "about four different types of agencies," but that there was not much available with the type of work that she did.  (Tr. 92-93).  As the ALJ reasoned, Plaintiff's reported daily activities and attempts to find employment suggest that her impairments are not of disabling severity.  (Tr. 21-22).

Plaintiff argues that the ALJ should have discussed the results of a hearing test performed

in September 2007, which showed Plaintiff had 60 percent speech discrimination in her right ear. (Tr. 226). This evidence predates Plaintiff's alleged onset date of February 1, 2008. (Tr. 158). Furthermore, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," so long as it is clear that the ALJ considered a claimant's medical condition as a whole. Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).

Here, the ALJ considered the medical evidence as a whole, including the results of hearing tests performed by Dr. Wazen in September 2008 - after Plaintiff's alleged onset date. Specifically, the ALJ noted that:

> The claimant testified that she cannot hear what people say and has problems with speech, hearing speech, and words. She stated that she hsa speech discrimination and she cannot make out words people are saying. However, a treatment note from the claimant's otolaryngologist Dr. Jack J. Wazen, M.D. on September 29, 2008 indicated that the claimant was able to communicate without difficulty. A hearing test demonstrated excellent ability to hear and understand simple words when amplified.

(Tr. 21, citing Tr. 221). The ALJ also considered Dr. Wazen's treatment notes, Plaintiff's minimal treatment history, and the opinion of Dr. Patty in making his RFC determination. (Tr. 21-23).

In support of her challenge to the ALJ's RFC finding, Plaintiff cites the observation of an employee of the Social Security Administration (SSA). (Doc. #14, pg. 12). The employee observed that, during the interview, Plaintiff had to stare up close in her face, and even then could not hear or understand what the interviewer was saying. (Tr. 169). This employee, however, was not a medical expert, nor has Plaintiff shown that the interview was conducted in an area with less than moderate noise. Dr. Wazen and Dr. Silverstein consistently noted that Plaintiff was able to communicate without difficulty. (Tr. 221-23). The evidence that Plaintiff had trouble hearing the SSA interviewer does not undermine the ALJ's RFC finding nor demonstrate she is unable to perform her past work as a purchasing agent.

Plaintiff also cites to her statements from an undated Disability Report that she cannot hear on phones, in group meetings, or in loud work environments; can only hear women, not men; cannot hear words spoken by either sex; cannot negotiate with people; and cannot do pricing. (Tr. 172). Plaintiff's own subjective reports of her limitations, standing alone, cannot establish disability. See 20 C.F.R. § 404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled"). As the ALJ reasoned (Tr. 21), the objective medical evidence demonstrates Plaintiff has an excellent ability to hear and understand simple words when amplified. (Tr. 221).

Plaintiff also argues that her tinnitus caused further work-related limitations that the ALJ did not accommodate in her RFC. In support, Plaintiff cites her testimony that due to her tinnitus she has to lay down 2 to 3 hours a day, gets nervous, cannot hear what people say, cannot concentrate for more than 10 minutes, and cannot drive. (Tr. 89-90, 95). Plaintiff also testified that her hearing aids make her tinnitus louder. (Tr. 91). These subjective reports do not establish that Plaintiff is disabled. See 20 C.F.R. § 404.1529(a). Plaintiff never reported to Dr. Wazen or any other physician that her tinnitus caused the symptoms and limitations described in her testimony and no physician stated that Plaintiff's tinnitus caused such limitations, which undermines her testimony. See Swindle, 914 F.2d at 226.

Plaintiff asserts that the opinion of Dr. Yadiel Alameda supports her allegations of disabling hearing loss, inability to concentrate due to tinnitus, and balance problems. (Doc. #14, pg. 13). On February 22, 2010, Dr. Alameda completed a "Hearing Loss Questionnaire" at the request of Plaintiff's attorney. (Tr. 258). Dr. Alameda stated that Plaintiff had hearing loss in both ears and recommended hearing aids. (Tr. 258). Dr. Alameda opined that Plaintiff was markedly impaired in her abilities to: hear instructions on a job; hear a telephone; hear sirens; and hear horns. (Tr. 258).

Dr. Alameda thought that Plaintiff should avoid hazards, machinery, work around equipment, and stressful work. (Tr. 258).

The ALJ gave Dr. Alameda's opinion little weight because it was not supported by objective clinical findings, was inconsistent with the record, including Plaintiff's reported activities of daily living, and was based heavily upon Plaintiff's own subjective reports. (Tr. 22). See 20 C.F.R. § 404.1527(d) (listing factors for weighing medical opinions, including whether the source presents objective medical evidence in support of his opinion and whether the source's opinion is consistent with the record as a whole). Dr. Wazen, who treated Plaintiff on multiple occasions, found that Plaintiff had an excellent ability to hear and understand simple words when amplified. (Tr. 221). In addition, Plaintiff's reported daily activities and attempts to find employment are inconsistent with an individual who is totally disabled. While it does appear that Dr. Alameda reviewed Plaintiff's treatment records (Tr. 252, 255), as discussed above, those records do not support the marked limitations he imposed. Thus, the Court recommends that it was reasonable for the ALJ to conclude that Dr. Alameda's opinion was based heavily on Plaintiff's own reports. (Tr. 22). The ALJ also discounted Dr. Alameda's opinion because he indicated that he treated Plaintiff on four occasions between September 2007 and September 2008, however, the treatment notes do not indicate that Dr. Alameda ever treated Plaintiff. (Tr. 22-23, 258).[4]

Additionally, Plaintiff argues that the ALJ did not consider the combined effects of her impairments on her RFC, specifically, her speech discrimination, concentration, and balance

---

[4] The records reflect that Plaintiff received treatment at the Florida Ear & Sinus Center/Silverstein Institute on the dates listed (Tr. 222-25, 258), however, Dr. Alameda's name is not included on any of these records. Plaintiff suggests that Dr. Alameda was a treating physician, Pl.'s Br. at 6, but the record does not indicate Dr. Alameda even examined Plaintiff. Dr. Alameda cannot qualify as a treating physician. See 20 C.F.R. § 404.1502.

problems. (Doc. #14, pg. 13). The ALJ must consider the combined effects of all of a claimant's impairments in deciding whether the claimant is disabled. See Walker v. Bowen, 826 F.2d 996, 1001 (11th Cir. 1987).

Here, the ALJ considered Plaintiff's hearing loss, and its resulting symptoms, when assessing her RFC. He also considered her reports of speech discrimination, balance problems, and concentration and considered how these ailments were addressed in the medical record. (Tr. 21). Specifically, the ALJ noted:

> Although the claimant has alleged symptoms with regard to her impairment, the medical records, such as office treatment notes, do not corroborate those allegations. She testified that she cannot wear her hearing aids for a long period of time because they give her headaches. Additionally, the claimant reported that she began experiencing headaches and losing her balance when walking (vertigo) (Exhibit 8E, p. 2). However, a treatment note from Dr. Wazen indicated that the claimant was not experiencing vertigo (Exhibit 2F, p. 1). The claimant did not complain to her treating physician about these symptoms which suggests that they would not interfere with the claimant's ability to perform work activities of any significant manner.

(Tr. 21). Therefore, the ALJ did consider the combined effect of Plaintiff's impairments on her ability to perform work in making his RFC finding. Ultimately, the ALJ found that the medical and other evidence did not support the degree of hearing loss and disabling symptoms, *i.e.*, balance problems and headaches, alleged by Plaintiff. (Tr. 21-23). The ALJ also noted his obligation to determine whether Plaintiff had an impairment or "combination of impairments" that was severe and stated that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (Tr. 17-18).

Therefore, the Court respectfully recommends that the ALJ's RFC determination was supported by substantial evidence on the record and should not be disturbed.

### *2. Whether Substantial Evidence Supports the ALJ's Finding that Plaintiff Could Perform Her Past Relevant Work*

Plaintiff next challenges the ALJ's step-four finding that Plaintiff could perform her past relevant work as a purchasing agent. Plaintiff argues that once a claimant has established that she cannot return to her past relevant work, the burden shifts to the Commissioner to establish that there is other work in the national economy that a claimant could perform. Plaintiff further asserts that the ALJ made an error in his failure to include all of Plaintiff's hearing limitations in the RFC, which led to an improper conclusion at step four and to the Commissioner's failure to show that there is other work in the national economy that Plaintiff could perform at step five.

A claimant bears the burden of proving that she cannot perform her past relevant work either as she performed it or as generally performed in the national economy. See 20 C.F.R. §§ 404.1520(f), 404.1560(b)(3); Jackson v. Bowen, 801 F.2d 1291, 1293-94 (11th Cir. 1986). After properly assessing Plaintiff's RFC, the ALJ found at step four that Plaintiff was able to perform her past relevant work as a purchasing agent as it was actually performed and generally performed in the national economy. (Tr. 23). See 20 C.F.R. § 404.1520(a)(4)(iv), (f). In so finding, the ALJ relied on the Dictionary of Occupational Titles (DOT), which indicated that the noise intensity level for Plaintiff's past work as a purchasing agent is "quiet." (Tr. 23, 218). See 20 C.F.R. § 404.1560(b)(2) (ALJ may rely on the DOT to aid in determining whether a claimant can perform her past relevant work, given the claimant's RFC). As discussed above, substantial evidence supports the ALJ's RFC finding that Plaintiff can perform a full range of work at all exertional levels, but that Plaintiff must avoid even moderate exposure to noise. Plaintiff has not established limitations above those specified in her RFC.

Plaintiff argues that she is "unlikely" able to perform the "frequent hearing" required by the

purchasing agent occupation due to her speech discrimination problems. (Doc. #14, pg. 14). However, Dr. Wazen stated in September 2008, that Plaintiff had an excellent ability to hear simple words when amplified (Tr. 221), and Plaintiff has cited no other credible medical opinion since that time that would suggest she is unable to hear frequently.

Finally, Plaintiff argues that the Commissioner failed to satisfy his burden at step five to show that Plaintiff could perform other jobs in the national economy. Since the ALJ found, based on substantial evidence, that Plaintiff could perform her past relevant work as a purchasing agent at step four, the ALJ was not required to move on to step five. See 20 C.F.R. §§ 404.1520(a)(4)(iv), (f), 404.1560(b)(3).

Therefore, the Court respectfully recommends that substantial evidence supports the ALJ"s finding that Plaintiff could perform her past relevant work as a purchasing agent.

Accordingly, it is now:

**RECOMMENDED:**

The decision of the Commissioner should be **AFFIRMED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this __4th__ day of November, 2011.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record